**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: March 19, 2018
Date Decided: April 16, 2018

Kenneth J. Nachbar, Esquire
Susan W. Waesco, Esquire
Matthew R. Clark, Esquire
Zi-Xiang Shen, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, P.O. Box 1347
Wilmington, DE 19899

Rolin P. Bissell, Esquire
Tammy L. Mercer, Esquire
James M. Yoch, Jr., Esquire
Benjamin M. Potts, Esquire
Young Conaway Stargatt & Taylor, LLP
Rodney Square
100 North King Street
Wilmington, DE 19801

Re: *The Williams Companies, Inc. v. Energy Transfer Equity, L.P., et al.*,
Cons. Civil Action Nos. 12168-VCG and 12337-VCG

Dear Counsel:

The underlying action arose from a failed multi-billion-dollar merger between

The Williams Companies, Inc. ("Williams") and Energy Transfer Equity, L.P.

("ETE"), both major participants in the energy pipeline business. That failure

resulted in a number of legal actions, in this Court and elsewhere.[1] I initially heard

this matter when Williams sought injunctive relief to force consummation of the

Merger, which ultimately failed. Both parties thereafter pursued claims against each

other in this action for contractual damages under the Merger Agreement. By

---

[1] This Letter Opinion assumes familiarity with the facts outlined in the previous Opinions of both this Court and the Supreme Court and includes only those facts necessary to my decision here. All defined terms have the same meaning as those described in my most recent Memorandum Opinion. *Williams Cos., Inc. v. Energy Transfer Equity*, 2017 WL 5953513, at *1 (Del. Ch. Dec. 1, 2017).

Memorandum Opinion of December 1, 2017 (the "Memorandum Opinion"), I dismissed a portion of a counterclaim by ETE by which ETE sought a large break-up fee. I also dismissed ETE's claim for fees and costs incurred in Texas litigation, as damages for breach of a forum selection clause of the Merger Agreement. ETE now seeks reargument of those decisions.

The Merger Agreement required the Board to enact four board recommendations, together known as the Company Board Recommendation, that approved the Merger and declared the Merger Agreement advisable to the stockholders. These were the resolutions necessary to consummate the Merger. The Board was forbidden to threaten or take action to withdraw, modify, or qualify the Company Board Recommendation in a way adverse to ETE. Any such action would lead to liquidated damages. I found that the Williams Board had not taken "formal" action—by which I meant action by the directors as a Board—committing any of the contractually forbidden actions. ETE's primary ground for reargument is that I misapprehended the facts regarding the Board's action, or misconstrued the contractual prohibition in light of the facts.

ETE's second ground for reargument arises from my dismissal of a claim by ETE for expenses and fees incurred when Williams filed suit in Texas against a principal of ETE, allegedly breaching a forum selection clause. I dismissed the claim based on language in the Merger Agreement requiring all parties to bear their own

fees and expenses in connection with the Agreement. ETE argues that my interpretation of this provision of the Merger Agreement is erroneous as a matter of law.

I find that I did not misapprehend the law or the facts and accordingly deny the Motion for Reargument. My reasoning follows. In addition, I adopt the reasoning stated in the Memorandum Opinion.

## I. THE BREAK-UP FEE

ETE's Motion for Reargument of its liquidated damages claim hinges on my interpretation of several provisions of the Merger Agreement. By way of brief background, according to ETE, changed economic conditions made the agreed-to union of Williams and ETE economically unattractive for both parties. Rather than renegotiate the Merger terms, Williams—in ETE's view—feigned fidelity to the Agreement, while working to undermine it, for the purpose of extorting a walk-away payment from ETE. Part of Williams' plan, presumably, was litigation in this Court seeking specific performance of the Agreement, which ETE successfully defended by invoking failure of a condition precedent. Nonetheless, ETE here claims that it was Williams that materially breached the Merger Agreement, entitling ETE to liquidated damages. In my Memorandum Opinion, I found this claim untenable.

Section 4.02(d) of the Merger Agreement provides that:

Neither the Board of Directors of the Company nor any committee thereof shall (i)(A) *withdraw* (or *modify* or *qualify* in a manner adverse

3

to Parent), or publicly propose to withdraw (or modify or qualify in a manner adverse to Parent), the Company Board Recommendation or (B) recommend the approval or adoption of, or approve or adopt, declare advisable or publicly propose to recommend, approve, adopt or declare advisable, any Company Takeover Proposal (any action described in this clause (i) being referred to as a "Company Adverse Recommendation Change").[2]

"Company Board Recommendation" is defined in Section 3.01(d)(i):

> The Board of Directors of the Company duly and validly adopted *resolutions* (A) approving and declaring advisable this Agreement, the Merger and the other Transactions, (B) declaring that it is in the best interests of the stockholders of the Company that the Company enter into this Agreement and consummate the Merger and the other Transactions on the terms and subject to the conditions set forth herein, (C) directing that the adoption of this Agreement be submitted to a vote at a meeting of the stockholders of the Company and (D) recommending that the stockholders of the Company adopt this Agreement ((A), (B), (C) and (D) being referred to herein as the "Company Board Recommendation"), which *resolutions*, as of the date of this Agreement, have not been rescinded, modified or withdrawn in any way.[3]

ETE contends that the remedy for a breach of Section 4.02(d) is liquidated damages of $1.48 billion.[4]

By contrast, Section 5.01(b) requires that Williams "shall use reasonable best efforts to obtain from its stockholders the Company Stockholder Approval in favor of the adoption of this Agreement."[5] The remedy for a breach of this provision is

---

[2] Merger Agreement § 4.02(d) (emphases added).
[3] *Id.* § 3.01(d)(i) (emphases added).
[4] Countercl. Compl. ¶¶ 8, 28, 51, 86. ETE cites to Sections 5.06(d)(iii) and 7.01(e) of the Merger Agreement as support for its interpretation that breach of Section 4.02(d) triggers a $1.48 billion termination fee.
[5] Merger Agreement § 5.01(b).

actual damages arising from the breach itself.[6] ETE alleges that Williams violated Sections 4.02(d) and 3.01(d)(i) through several actions described below. Williams denies any breach, and argues that ETE's allegations, at most, implicate Section 5.01(b).

*A. Alleged Actions*

ETE points to the following actions, individually and cumulatively, as breaches of Section 4.02(d):

1. Press Releases

ETE argues that the Williams Board used press releases "as a weapon to extract a walk-away payment" despite splits in opinion among the directors about the value of the Merger.[7] ETE tries to convert these facially positive statements into negative statements about the transaction by highlighting changes through time, such as:[8]

| January 15, 2016 press release | April–May 2016 press releases |
| --- | --- |
| The [Williams Board] is unanimously committed to completing the transaction with Energy Transfer Equity, L.P. (NYSE: ETE) per the merger agreement executed on September 28, 2015 as expeditiously as possible and delivering the benefits of the transaction to Williams' stockholders. | The Williams Board is unanimously committed to enforcing its rights under the merger agreement entered into with ETE on September 28, 2015 and to delivering the benefits of the merger agreement to Williams' stockholders. |

---

[6] *Id.*; Nov. 30, 2016 Hr'g Tr. 14:9–17:5.
[7] Countercl. Compl. ¶¶ 60–62.
[8] *Id.*

ETE argues that the press releases from April to May 2016 violated Section 4.02(d) by omitting the "commit[ment] to complet[e] the transaction" language of the January press release. According to ETE, against a "backdrop" of internal director dissension, "the Williams Board's public statements regarding unanimity cannot be understood as anything but a litigation-driven attempt to obtain a walk-away payment."[9] ETE makes a similar argument for press releases issued by Williams regarding litigation in this Court and in Texas.[10]

### 2. Media Campaign

ETE alleges that Williams engaged in a "media campaign" against the Merger.[11] Williams purportedly did this by "planting media reports disfavoring ETE" through its attorney and through interactions with the Wall Street Journal by a Williams public relations employee.[12] ETE also contends that "Williams made a number of disparaging statements concerning ETE's management team in multiple public lawsuits and (upon information and belief) through its public relations firm, Joele Frank."[13] ETE argues that "Williams or its public relations consultant, Joele Frank, leaked confidential information to the media in a further effort to denigrate ETE and its managers."[14] To the extent these media statements disparaged Warren,

---

[9] *Id.* ¶ 65.
[10] *Id.* ¶ 75.
[11] *Id.* ¶¶ 16, 22, 78.
[12] *Id.* ¶ 78.
[13] *Id.* ¶ 69.
[14] *Id.* ¶ 79.

ETE suggests they were especially egregious in light of the Form S-4 Williams filed regarding the Merger, which touted Warren's anticipated leadership of the combined entity.[15] ETE makes the same argument with respect to disparaging statements in various lawsuits, described below.

### 3. Lawsuits

In response to an issuance of equity by ETE during the pendency of the Merger, Williams sued Warren in Texas state court (the "Texas action"). The complaint—which ETE avers was approved by Williams' Board—described Warren as a "'malicious' executive who has 'exploited' his leadership position at ETE."[16] According to ETE, the litigation and its averments constitute a Company Adverse Recommendation Change. ETE makes a similar allegation regarding the Merger Actions filed in this Court, by which Williams sought to *enforce* the Merger Agreement, noting that filings by Williams accuse ETE of "sabotage," "fabrication," "illegitimate" avoidance of contractual obligations, and other unethical behavior.[17] ETE states that these "extreme and unnecessary descriptions are contrary to the Company Board Recommendation and inconsistent with Williams' obligations under the Merger Agreement" and "violate[] Section[] 4.02 . . . of the Merger Agreement."[18]

---

[15] *Id.* ¶¶ 18, 90–95.
[16] *Id.* ¶ 16.
[17] *Id.* ¶¶ 80–81.
[18] *Id.* ¶¶ 81, 86.

4. <u>SEC Filings</u>

ETE alleges that certain of Williams' Form S-4 filings independently constitute modifications or withdrawals of the Company Board Recommendation.[19] In a May 4, 2016 amendment to the Form S-4, Williams explained that:

> The WMB Board believes it is *appropriate* to *continue to rely* on the fairness opinions dated September 28, 2015 for purposes of its original decision to enter into the merger agreement. However, the WMB Board acknowledges that [its] fairness opinions only address fairness of the consideration to be received by WMB stockholders as of September 28, 2015 and the WMB Board no longer believes that the projections underlying those fairness opinions are valid. Accordingly, the WMB Board is not relying on those fairness opinions in evaluating its recommendation to Williams' stockholders to adopt the merger agreement in light of the developments described in this section. . . . The WMB Board believes it has, with the assistance of WMB management and the WMB Board's financial advisors, the necessary expertise to evaluate the impact of changed economic conditions on the merits of the merger transaction. After carefully reviewing the developments described in this section, including those noted above, the WMB Board has *not changed its recommendation* from its *vote* on September 28, 2015 that WMB stockholders *adopt* the *merger agreement*.[20]

This statement, in ETE's view, is sufficient to trigger Section 4.02 and result in liquidated damages of $1.48 billion because "the Company Board Recommendation

---

[19] *Id.* ¶¶ 23–34, 89–90; Defs.' & Countercl. Pls.' Br. in Opp'n to Pl. & Countercl. Def.'s Mot. to Dismiss & to Strike Defs. & Countercl. Pls.' Second Am. & Suppl. Affirmative Defenses & Verified Countercl. ("Defs.' Ans. Br.") 2–3, 12; Mar. 19, 2018 Oral Arg. Tr. 9:19–10:2.

[20] Pl.'s Br. in Support of its Motion to Dismiss & to Strike Defs. & Countercl. Pls.' Second Am. & Supp. Affirmative Defenses & Verified Countercl. Ex. E (Am't No. 5 to Form S-4 Reg'n Statement, dated May 4, 2016) 24–25 (emphases added). I consider the SEC filings referred to in the Complaint to be incorporated by reference. *See, e.g., Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 797 (Del. Ch. 2016).

8

was weakened by the absence of a fairness opinion. If a disclosure is weakened, it is modified or qualified."[21] ETE argues that Williams also modified or qualified the Company Board Recommendation when the Form S-4 amendment stated that certain material factors previously relied on were no longer reliable, such as projections for dividends, certain synergies, and an "ongoing presence in Tulsa, Oklahoma."[22]

*B. Discussion*

"To prevail on a motion for reargument under Rule 59(f), the moving party must demonstrate that the Court either overlooked a decision or principle of law that would have controlling effect or misapprehended the facts or the law such that the outcome of the decision would be different."[23] ETE "bear[s] a heavy burden on a Rule 59 motion. Such motions are not a mechanism for litigants to relitigate claims already considered by the court."[24] The Motion for Reargument addresses an underlying Motion to Dismiss under Rule 12(b)(6).[25] When reviewing a motion to dismiss,

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate

---

[21] Countercl. Compl. ¶¶ 23–24, 90; *see also* Defs.' Ans. Br. 2–3; Mar. 19, 2018 Oral Arg. Tr. 9:19–10:2.

[22] Defs.' Ans. Br. 12–13; Countercl. Compl. ¶ 93.

[23] *In re Zale Corp. S'holders Litig.*, 2015 WL 6551418, at *1 (Del. Ch. Oct. 29, 2015).

[24] *In re ML/EQ Real Estate P'ship Litig.*, *Consol.*, 2000 WL 364188, at *1 (Del. Ch. Mar. 22, 2000).

[25] *Williams Cos., Inc.*, 2017 WL 5953513, at *2.

unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[26]

"Dismissal of a claim based on contract interpretation is proper if the defendants' interpretation is the *only* reasonable construction as a matter of law."[27]

ETE contends that I misinterpreted the Merger Agreement when I found that Williams' actions, adumbrated above, failed to state a claim under Section 4.02(d) for liquidated damages. That is, ETE argues that my interpretation of the contract, holding that the actions alleged in the Complaint did not constitute the withdrawal, modification, or qualification of the Company Board Recommendation in favor of the Merger, was in error.

Williams' Board, via resolution, complied with the Company Board Recommendation requirement. The Board never explicitly withdrew, modified, or qualified this recommendation, or threatened to do so. Subsequently, Williams' stockholders voted overwhelmingly in favor of the Merger. ETE's view, however, is that the Company Board Recommendation does not serve only to maintain board resolutions sufficient for closing. ETE argues that this clause, together with Section 4.02(d), instead serves as an anti-disparagement clause. I note that Section 5.01 is a separate best efforts provision that would also presumably prohibit disparagement

---

[26] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes and internal quotation marks omitted).
[27] *Caspian Alpha Long Credit Fund, L.P. v. GS Mezzanine P'rs 2006, L.P.*, 93 A.3d 1203, 1205 (Del. 2014) (internal quotation marks omitted).

of the kind that ETE alleges.[28]  Section 5.01 allows the counterparty, upon breach of the best efforts clause, to recover actual damages; by contrast, Sections 3.01(d)(i) and 4.02(d) provide liquidated damages where the Board threatens or acts to withdraw, modify, or qualify the Company Board Recommendation.

The latter two sections of the Merger Agreement are aimed at maintaining a resolution without which the Merger may not close.  It is not reasonably conceivable, reading the contract as a whole, that the parties meant that other acts, which might reasonably be seen to disparage the transaction or which might cool stockholder ardor for the Merger, should come under this liquidated damages clause relating to a requirement that the Board resolve those things *necessary* to the Merger.  Section 4.02(d) refers to Section 3.01(d)(i), which requires certain resolutions by Williams' Board; it then prohibits Board action undoing the resolutions.  Williams' Board explicitly took no such action; ETE argues that actions Williams did take should be interpreted, *practically*, as incompatible with Williams' undertaking in the Merger Agreement.  But it is ETE's construction that leads to an impractical result.  Under ETE's reading, where a board enacted the required recommendation, but the company then disparaged the counterparty or its chairperson or amended certain assumptions about the merger through SEC filings, after which the company's stockholders nonetheless *accepted* the board's favorable recommendation and voted

---

[28] Merger Agreement § 5.01.

to approve the merger, the company is liable for the full amount of liquidated damages as if the board had withdrawn its recommendation and torpedoed the merger. In other words, actions by Williams that led to a consummated transaction leave it liable as though it had withdrawn from the transaction. This is a nonsensical reading of the language of the Merger Agreement, and is not consistent with the language the parties themselves chose.[29]

ETE points out that the "safe harbor" provision in the Merger Agreement at Section 4.02(f) allows Williams to make certain disclosures to stockholders—provided it reaffirms its recommendation in favor of the Merger contemporaneously—notwithstanding the prohibition against a Company Adverse Recommendation Change. Therefore, ETE argues, some statements or disclosures short of an explicit withdrawal or negative modification of the Company Board Recommendation are so inimical to the consummation of the Merger that they would nonetheless amount to a breach of Section 4.02(d). Otherwise, the safe harbor reference would be surplusage. Assuming this is so, ETE has not pled such disclosures here.

---

[29] *See, e.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160–61 (Del. 2010) (rejecting "an absurd interpretation of [a] contract" and stating that "[a]n unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract").

The Merger Agreement required the Board to adopt the Company Board Recommendation, without which a confirmatory vote by Williams' stockholders could not take place. Withdrawal or adverse change to these resolutions, or a threat to do so, would trigger liquidated damages. By contrast, statements by Williams adverse to the Merger would presumably violate the best efforts clause, entitling the counterparty to actual damages, if any. The acts taken by Williams (in some cases in an effort to consummate the Merger), if actionable, fall in the second category, not the first.

## II. ETE'S PURSUIT OF FEES AND COSTS INCURRED IN THE TEXAS ACTION AS DAMAGES FOR BREACH OF THE MERGER AGREEMENT

During the pendency of the Merger, Williams brought an action in Texas against Warren, ETE's principal, regarding ETE's issuance of equity in ETE to insiders.[30] The Texas Court—per ETE—dismissed the suit as in violation of the forum selection clause in Section 8.01(b) of the Merger Agreement.[31] Accordingly, ETE seeks the fees and costs it incurred in the Texas action as damages for violation of Section 8.01(b).[32]

Section 5.06(a) of the Merger Agreement states that "all fees and expenses incurred in connection with this Agreement and the Transactions shall be paid by

---

[30] *Williams Cos., Inc.*, 2017 WL 5953513, at *8.
[31] *Id.* at *2.
[32] *Id.* at *8.

the party incurring such fees or expenses."[33]  In the Memorandum Opinion, I found that the parties "waived any right to receive fees and expenses for a breach of the Agreement" in Section 5.06(a).[34]  ETE argues that this finding is erroneous because Section 5.06(a) "says nothing about the recovery of damages for a breach of the Merger Agreement"[35] and posits that the parties would have used different language to achieve that result, such as: "in connection with . . . disputes or controversies arising out of or relating to" the Agreement.[36]  Williams, by contrast, points to case law stating that, with regard to a fee-shifting provision, the phrase "in connection with" is "paradigmatically broad" and "unquestionably broad."[37]  Williams argues that "[f]ees allegedly incurred as a result of a purported breach of the Merger Agreement are obviously a subset of all fees . . . incurred in connection with th[e Merger] Agreement."[38]  These arguments were presented to me and considered in the Memorandum Opinion.

In ETE's view, Section 5.06(a) is, at best, ambiguous, and in dismissing its claim for fees and costs by relying on the plain language of Section 5.06(a), I have

---

[33] Merger Agreement § 5.06(a).

[34] *Williams Cos., Inc.*, 2017 WL 5953513, at *8.

[35] Defs. & Countercl. Pls.' Mot. for Reargument on Pl. & Countercl. Def.'s Mot. to Dismiss or Strike ("Defs.' Mot. for Reargument") 10.

[36] *Id.*; *see Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *3 (Del. Ch. Aug. 22, 2006) (determining the scope of "in connection with" in the context of an arbitration clause).

[37] Pl.'s Opp'n to Defs.' Mot. for Reargument 11–12 (quoting *Lillis v. AT & T Corp.*, 904 A.2d 325, 331 (Del. Ch. 2006)).

[38] *Id.* at 11 (internal citations omitted).

made an error of law.  ETE's disagreement with my conclusion, however well-founded, does not amount to a proper ground for reargument.

## III. CONCLUSION

Upon careful review of ETE's arguments, I find that I did not misapprehend the facts or the law in dismissing ETE's claims for liquidated damages or for damages arising from breach of the forum selection clause.  Therefore, the Motion for Reargument is DENIED.  To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III